UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:24-cr-00017-01 |
| VERSUS | JUDGE DOUGHTY |
| CHARLES LOGWOOD | MAGISTRATE JUDGE McCLUSKY |

**DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING HIS MOTION TO SUPPRESS**

NOW INTO COURT comes Defendant, CHARLES LOGWOOD, through undersigned counsel, who respectfully objects to the Report and Recommendation (R & R) issued regarding his motion to suppress.

**Mr. Logwood Objects to the R & R's Factual Findings and Legal Conclusion That Deputy Nugent Was Justified in Initiating the Traffic Stop.**

The R & R found that, "Nugent was justified in initiating the traffic stop," because Mr. Logwood did not deny failing to use a turn signal and because Nugent testified that he did not observe Mr. Logwood's using a turn signal. R. Doc. 44, p. 12. However, the R & R minimizes the significance of the following key facts:

1. Mr. Logwood did not fail to deny the omission as much as he deferred directly answering the officer's question. When Deputy Nugent asked Mr. Logwood whether he forgot to use a turn signal, Mr. Logwood answered, "Yeah, no, I was just trying to go into the store." Exhibit 2. Not denying something does not necessarily indicate agreement: it can also demonstrate an understandable desire not to confront a law

1

enforcement officer when stopped. The R & R assumes that there only one plausible explanation for Mr. Logwood's lack of denial.

2. The R & R determines that Mr. Logwood did not, in fact, use a turn signal. R. Doc. 44, p. 12. The only evidence that Mr. Logwood did not use his turn signal was Deputy Nugent's testimony. That testimony is not credible due to the uncontradicted evidence of the factors which would make it extremely unlikely that the officer saw Mr. Logwood's taillight: (1) the officer's extreme speed while passing other vehicles on a two-lane road; and (2) the officer's distance from Mr. Logwood's vehicle. R. Doc. 44, p. 12. The R & R cites Nugent's eighteen years of experience as a law enforcement officer as evidence of his ability to see a single taillight up to a mile away, while driving at an extremely high speed and passing other cars on a two-lane road. The R & R credits Deputy Nugent's testimony despite the fact that there was no evidence presented of either his extraordinary vision or exceptional driving skill that would have enabled him to overcome the conditions under which he allegedly made his observation.

3. In all likelihood, the traffic stop was pretextual, and while pretextual stops are not illegal, traffic stops where there was no traffic law infraction, which would have justified the stop, are illegal. The Fifth Circuit held that although *Whren* gave officers "broad leeway" to conduct searches even if their intent is pretextual, "the flip side of that leeway is that the legal justification must be objectively grounded." *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). In this case, the R & R notes that, as part of an on-going investigation, local law enforcement was on the lookout for Mr. Logwood's Black Ford Edge heading toward Lowe's in Monroe. R. Doc. 44, p. 1.

Deputy Nugent testified that he "was sitting waiting" for Mr. Logwood. R. Doc. 41, p. 18. Because there is no evidence, apart from Nugent's testimony as discussed above, that there was any objective basis for the stop of Mr. Logwood, there is little evidence to support the finding that the traffic stop was reasonable.

**Mr. Logwood Objects to the R & R's Factual Findings and Legal Conclusion That Officers Lawfully Searched the Vehicle.**

The R & R cites the smell of marijuana and Mr. Logwood's consent as validating the search and seizure of his vehicle. R. Doc. 44, p. 14. Mr. Logwood objects for the following reasons:

1. While the smell of marijuana emanating from a vehicle during a traffic stop can provide an officer with probable cause to search the vehicle, the stop itself must be lawful. As the U.S. Supreme Court articulated in *Terry*, the first inquiry is "whether or not the officer's decision to stop the vehicle was justified at its inception." *United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir. 2010). Because Deputy Nugent unlawfully initiated the traffic stop, his search of Mr. Logwood's vehicle was constitutionally tainted.

2. Mr. Logwood's consent to the search of his vehicle does not cure the Fourth Amendment violation, since the stop itself was unlawful. When consent is made subsequent to an illegal stop, "in addition to proving voluntariness, the government must show a sufficient break in events to undermine the inference that the consent to search was caused by the fourth amendment violation." *United States v. Cherry*, 759 F.2d 1196, 1210-11 (5th Cir. 1985) (quoting *Oregon v. Elstad*, 470 U.S. at ----, 105 S. Ct. at 1292). In this case, both are missing. Mr. Logwood was, as the R & R notes, effectively in custody at that time, since "a

3

reasonable person might not have felt free to leave." R. Doc. 44, p. 15. Second, there was no break between the illegal traffic stop and the officer's request to search Mr. Logwood's vehicle. The R & R did not consider either voluntariness or the relative importance of this temporal factor with regards to Mr. Logwood's consent to search his vehicle.

For these reasons, Mr. Logwood objects to the above factual findings and conclusions of the Report and Recommendation.

Respectfully submitted,

**REBECCA L. HUDSMITH**
Federal Public Defender for the Western and Middle Districts of Louisiana

**s/  Caroline (Tory) Green**
Caroline (Tory) Green, LSBA No. 39198
Assistant Federal Public Defender
300 Fannin Street, Suite 2199
Shreveport, Louisiana 71101
318-676-3310
Fax: 318-676-3313
Email: caroline_green@fd.org

CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that I have served a copy of the above and foregoing by emailing a copy of same to AUSA J. Aaron Crawford this 12th day of November, 2024.

**s/ Caroline (Tory) Green**
Caroline (Tory) Green
Assistant Federal Public Defender